# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. WILLIAM TOMASZEWSKI, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>TREVENA, INC., MAXINE GOWEN and ROBERTO CUCA,<br><br>*Defendants.* | CIVIL ACTION NO. 18-4378 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                                                      **May 28, 2019**

       This is a federal securities class action brought on behalf of investors against Trevena, Inc. and its former executives for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.[1] As lead plaintiff and lead counsel must be appointed pursuant to 15 U.S.C. § 78u-4, Plaintiffs Huseyin Erenoglu, a group of five individual members[2] (collectively, "Trevena Group"), and Lanphie Ping have each moved for such appointment and for approval of their choice of lead counsel.[3] Upon consideration of the motions, the responses thereto, and the oral arguments presented at a hearing held on February 20, 2019, the Court determines that Trevena Group shall be appointed as lead plaintiff for the class and approves of Block & Leviton LLP as its choice of lead counsel and Kaufman Coren & Ress, P.C. as liaison counsel, for the following reasons.

---

[1] The cases which have been consolidated in this action are: *Tomaszewski v. Trevena, Inc., et al.*, No. 18-4378; *Mastopietro v. Trevena, Inc., et al.*, No. 18-4426; and *Louis v. Trevena, Inc., et al.*, No. 18-4779. [Doc. No. 18].

[2] Those individual members are Albert Koch, Whittier Pierce, Christopher Beyers, Kevin Walsh and Peter Palmer.

[3] All other individuals or groups who previously moved to be appointed have since withdrawn their motions.

## I. BACKGROUND[4]

Trevena is a clinical stage biopharmaceutical company that discovers, develops, and seeks to commercialize therapeutics by utilizing a novel approach to treating moderate to severe acute pain intravenously. Trevena allegedly issued a press release on May 2, 2016, announcing that it had reached a general agreement with the FDA on key elements of its clinical development program for one of its products, Olinvo (oliceridine). Based on those statements and omissions as to the strength of the program, the design of its Phase III trial, and its prospects for obtaining FDA approval, the price of Trevena's stock began to increase. On October 9, 2018, however, two days before the FDA would meet with Trevena to determine whether Olinvo would be granted approval, the FDA publicized a briefing document which contained minutes from its 2016 meeting with Trevena that it previously criticized the design of the Phase III trial and that the FDA's Advisory Committee was recommending rejection of Olinvo's new drug application. As a result, the price of Trevena's stock dropped 64% by the time the market closed on October 9. Plaintiffs are comprised of investors who purchased Trevena common stock between May 2, 2016 and October 8, 2018 (the "Class Period").

The Court has previously consolidated the three separate lawsuits against Trevena and its former executives, and now must decide whether Erenoglu, Trevena Group, or Ping will serve as lead plaintiff. A hearing was held on February 20, 2019, after which the Court required Erenoglu to produce his trade confirmations from the Class Period to the Court and to the other Moving Plaintiffs, and permitted further briefing upon receipt of the trade confirmations.[5]

---

[4] The following facts, unless otherwise noted, are taken from the Complaint and assumed to be true for purposes of the motions.

[5] Order [Doc. No. 35].

## II. PROCEDURAL REQUIREMENTS

The PSLRA requires that within 20 days of filing a complaint, the plaintiff must "cause to be published, in a widely circulated national business-oriented publication or wire service," notice to members of the purported class as to "the pendency of the action, the claims asserted therein, and the purported class period."[6] Within 60 days of the date on which the notice is published, "any member of the purported class may move the court to serve as lead plaintiff of the purported class."[7]

On October 11, 2018, one day after the Complaint was filed, a notice of the pendency of this action was published on *PR Newswire*, a national business-oriented newswire service.[8] On December 10, 2018, 60 days after the notification release, Erenoglu, Trevena Group, and Ping each filed timely motions to serve as lead plaintiff, and for appointment of lead counsel for the class.[9]

## III. LEGAL STANDARD

Under the PSLRA, the court must appoint a lead plaintiff "as soon as practicable" after a class action securities lawsuit has been consolidated.[10] The presumptive lead plaintiff is the investor with the largest financial interest in the outcome of the action, as long as that investor satisfies the following Federal Rule of Civil Procedure 23 requirements: (1) the claims must be

---

[6] 15 U.S.C. § 78u-4(a)(3)(A)(i)(I).

[7] *Id.* § 78u-4(a)(3)(A)(i)(II).

[8] *See* Trevena Group Mot., Ex. A [Doc. No. 8-3] (providing the website's announcement and validating that it was in fact published on October 11, 2018).

[9] Lanphie Ping Mot. [Doc. No. 5]; Trevena Group Mot. [Doc. No. 8]; Huseyin Erenoglu Mot. [Doc. No. 9].

[10] 15 U.S.C. § 78u-4(a)(3)(B)(ii).

typical of and share common questions of law with the claims of the absent class members, and (2) the investor must adequately represent the interests of the entire class.[11]

The presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either: (1) "will not fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."[12] If the court finds, for any reason, that the movant with the largest loss cannot make a threshold showing of typicality and adequacy, the court must explain its reasons, disqualify that movant, and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified."[13]

## IV.  DISCUSSION

### A. Largest Financial Loss

The three relevant factors when analyzing the largest financial interest are: (1) the number of shares purchased during the class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.[14] The third factor—the approximate losses suffered—has been considered by courts within this Circuit to be the most significant in the context of securities litigation.[15]

---

[11] 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(bb)–(cc). As various district courts have noted, the statute was enacted to "prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 492–93 (D. Conn. 2017) (quoting *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 615 (S.D.N.Y. 2015)); *Rabin v. John Doe Market Makers*, 254 F. Supp. 3d 754, 760 (E.D. Pa. 2015) (citation omitted).

[12] 15 U.S.C. §§ 78u-4(a)(3)(iii)(II)(aa)–(bb).

[13] *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (citation omitted).

[14] *Id.* at 262 (citations omitted).

[15] *See Kanefsky v. Honeywell Int'l Inc.*, No. 18-15536, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019) (collecting cases); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (same).

Erenoglu alleges that he suffered the greatest financial loss of $552,075.43.[16] Both Trevena Group and Ping have contested this calculation in their briefs and during the hearing. Erenoglu was ordered to produce his trade confirmations,[17] which revealed that Erenoglu had overstated his total losses by $518.61. Nevertheless, for purposes of the largest financial interest, Erenoglu still retains the largest financial interest of the Moving Plaintiffs in this case,[18] as Trevena Group's five members show aggregated total losses of approximately $485,972.97,[19] and Lanphie Ping lost $205,654.53.[20]

### B. Rule 23 Requirements

Typicality is not a concern here, as all Moving Plaintiffs have established that their claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and [] is based on the same legal theory."[21] However, Moving Plaintiffs dispute whether the other Plaintiffs can establish adequacy of representation for the class. Determining "adequacy" requires courts to consider: (1) whether the potential representative "has the ability and incentive to represent the claims of the class vigorously;" (2) whether the potential representative "has obtained adequate counsel;" (3) whether "there is [a] conflict

---

[16] Huseyin Erenoglu Mot. [Doc. No. 9-1] at 6; Daniel Sadeh Decl. [Doc. No. 9-2] at 2; Huseyin Erenoglu Decl., Ex. C. [Doc. No. 9-5].

[17] *See In re Cendant Corp. Litig.*, 264 F.3d at 262 ("Any time the question [of the largest financial interest] appears genuinely contestable, we think that a district court would be well within its discretion . . . in seeking further information if it deems the original submissions to be an inadequate basis for an informed decision.").

[18] In their supplemental briefs, Trevena Group and Ping now appear to concede this point. Lanphie Ping Statement [Doc. No. 39] at 2; Trevena Group Mem. in Further Supp. of Mot. [Doc. No. 40] at 2-3.

[19] Trevena Group Mot. [Doc. No. 8-1] at 6; Deborah Gross Decl., Exs. G-L [Doc. Nos. 8-9 to 8-14].

[20] Lanphie Ping Mot. [Doc. No. 5-1] at 4; Jacob Goldberg Decl., Ex. 3 [Doc. No. 5-5].

[21] *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (internal quotation marks and citations omitted). The requirement "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (internal quotation marks and citation omitted). No Moving Plaintiff has attempted to rebut the presumption of another based on issues of typicality.

between [the movant's] claims and those asserted on behalf of the class;" and (4) "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel."[22] The court must review the pleadings filed, the movant's application, and any other information that has been submitted.[23]

### 1. Huseyin Erenoglu

As the investor with the largest financial loss, Huseyin Erenoglu asserts that his similar interests with those of the class in recovering a maximum amount of damages, his lack of conflict in his adequacy to represent the class, and his choice of counsel render him the prevailing lead plaintiff. Erenoglu has submitted a declaration stating that he resides in the United States, independently seeks appointment as lead plaintiff, and understands the requirements to serve as lead plaintiff and is willing to do so.[24]

The other Moving Plaintiffs argue that there are errors in Erenoglu's sworn certifications and declarations when compared to his trade confirmations, and that although Erenoglu's certification and declaration accurately reflect the number of shares purchased and sold, they do not accurately reflect the number of trades and the price per share. Instead, as Erenoglu admits, he combined certain trades and averaged the per-share prices, overstating his total losses by $518.61.[25] Additionally, the other Moving Plaintiffs point to the fact that Erenoglu misstated the date on which some of the shares of common stock were purchased, which Erenoglu also

---

[22] *In re Cedent Corp. Litig.*, 264 F.3d at 265 (internal quotation marks and citations omitted).

[23] *Id.* at 264.

[24] Huseyin Erenoglu Reply Mem. of Law in Further Supp. of Mot. [Doc. No. 17] at 8; Huseyin Erenoglu Decl. [Doc. No. 17-5] at 1.

[25] *See* Erenoglu Resp. in Further Supp. of Mot. [Doc. No. 43] at 5 ("The cost basis per share for Mr. Erenoglu's 315,000 share purchase, without the negligible rounding to $2.60 per share reflected on his screenshots, is $2.5983 per share, which amounts to an approximate $500 difference in [] total losses.").

6

concedes.[26] According to the other Moving Plaintiffs, the errors in his sworn statements highlight issues of carelessness, which undermine his adequacy to serve the class as lead plaintiff.

The Court agrees with the other Moving Plaintiffs that the errors in Erenoglu's sworn statements amount to a substantial degree of carelessness and raise doubt as to whether he will fairly and adequately represent the best interests of the class. Sworn declarations are integral to the PSLRA process, as they assure district courts that the proposed plaintiff (1) has suffered financial harm; (2) is not a serial litigant; and (3) is interested and able to serve as lead plaintiff.[27] Although Erenoglu submits that his errors are minor or inadvertent mistakes in absolute terms,[28] they nonetheless speak to a level of carelessness especially where the errors were repeated.[29] Particularly given that these errors were made at the outset of the case, this

---

[26] *See id.* at 3 n.1 (stating that "there was a minor typographical error relating to the date on which three of those purchases were made," where he "purchased 9,457 shares at $2.40 per share in a pre-market trade on October 2, 2018, and he purchased 5 shares at $2.69 per share, 15,000 shares at $2.70 per share, and 464 shares at $2.88 per share on October 4, 2018 instead of October 2, 2018"). Erenoglu also provides that this misstatement was a "minor and inadvertent typographical error" since the actual date was still within the Class Period. Huseyin Erenoglu Reply Mem. of Law in Further Supp. of Mot. [Doc. No. 17] at 1. Furthermore, Erenoglu notes that he will submit a corrected certification with the filing of an anticipated Consolidated Amended Complaint. *Id.* at 5 n.4 (citing *Vladimir v. Bioenvision, Inc.*, No. 07-6416, 2007 WL 4526532, at *9 n.19 (S.D.N.Y. Dec. 21, 2007) (accepting revised certifications after typographical and other errors were detected)).

[27] 15 U.S.C. § 78u-4(a)(2)(A).

[28] *See In re Solar City Corp. Sec. Litig.*, No. 16-4686, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) ("Multiple district courts have held that minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." (internal quotation marks and citations omitted)).

[29] *See Camp v. Qualcomm Inc.*, No. 18-1208, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (highlighting "doubts about [the lead plaintiff's] ability to serve as the class representative because of . . . errors in the transaction records and loss calculations accompanying [his] motion" (internal quotations and citation omitted)); *Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass. 2018) ("[Plaintiff's] willingness to make false statements under oath contributes to the court's conclusion that he would not have been an adequate lead plaintiff."); *Hirtenstein v. Cempra, Inc.*, Nos. 16-1303, 16-1356, 16-1451, 2017 WL 2874588, at *3 n.5 (M.D.N.C. July 5, 2017) ("Finally, though the error in [one of the lead plaintiff's] personal declaration[s] did not affect the . . . Group's loss calculations, the parties are cautioned that exhibits to sworn declarations should be treated carefully and that even typographical errors can have detrimental effects in securities litigation." (citation omitted)); *Bhojwani v. Pistolis*, No. 06-13761, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (expressing concern with a minor loss calculation error as reflecting "a certain carelessness about detail that undermines the adequacy of" the proposed lead plaintiff).

causes the Court to doubt whether Erenoglu possesses the necessary adequacy and sophistication to be lead plaintiff.

### 2. Trevena Group

Trevena Group comprises five individuals who lost a substantial amount of monetary funds, and who have indicated a willingness to serve the role of lead plaintiff. Because the PSLRA expressly permits groups to serve as lead plaintiff,[30] Trevena Group argues that it is entitled to do so in this case.[31] The five members additionally submitted a joint declaration, stating that they carefully and thoughtfully participated in a telephone conference before filing the motion and set forth various procedures and ways of communication in order to best serve the role of lead plaintiff.[32] Trevena Group has selected Block & Leviton to serve as lead counsel, and Kaufman Coren & Ress, P.C. to serve as liaison counsel, both with sufficient experience in securities litigation.[33]

The other Moving Plaintiffs attempt to rebut Trevena Group's presumptive lead plaintiff status by contending that the group is too large, and that the lack of knowledge as to its members' pre-existing relationships raises doubt in terms of whether Trevena Group is lawyer-driven or whether its members can function cohesively and collectively as a group. The Third Circuit has indeed cautioned groups from forming based on efforts of lawyers who hope to "ensure their eventual appointment as lead counsel," and has noted that groups may sometimes be too large for its members to operate effectively as a single unit.[34]

---

[30] 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

[31] *In re Cendant Corp. Litig.*, 265 F.3d at 266–67.

[32] *See generally* Trevena Group Joint Decl. in Supp. of Mot. [Doc. No. 8-17].

[33] Deborah Gross Decl., Exs. M, N [Doc. Nos. 8-15, 8-16].

[34] *In re Cendant Corp. Litig.*, 265 F.3d at 267.

The Third Circuit has agreed "with the Securities and Exchange Commission that courts should generally presume that groups with more than five members are too large to work effectively."[35] The fact that Trevena Group is at the quantitative capacity of what the Third Circuit deems as adequate does not rebut the presumption of Trevena Group from becoming lead plaintiff. Although Ping argues that an individual would better serve the interests of the class than a group, "the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job."[36] Thus, the size of Trevena Group does not make it any less viable of a candidate for lead plaintiff.

Additionally, even though the other Moving Plaintiffs speculate as to whether this geographically diverse group[37] has been created by counsel or whether the group can effectively work together to become lead plaintiff, these allegations are unsupported.[38] The PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"[39] Among the many factors to consider in determining whether the movant will "fairly and adequately protect the interests of the class" are whether the individuals had a pre-existing relationship, the extent of that relationship, and whether the group was created by the efforts of

---

[35] *Id.* (citation omitted).

[36] *Id.* at 268.

[37] Trevena Group's joint declaration provides that Koch is a resident of Canada, Pierce is a resident of Connecticut, Beyers is a resident of Minnesota, Walsh is a resident of South Carolina, and Palmer is a resident of New Hampshire. Trevena Group Joint Decl. in Supp. of Mot. [Doc. No. 8-17] at 1-2.

[38] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety.").

[39] *Id.* at 266.

9

lawyers for the purpose of obtaining lead plaintiff status.⁴⁰ The Third Circuit has not explicitly defined what constitutes an adequate pre-existing relationship, and under the circumstances presented here, it is reasonable to conclude that a relationship based on informed communication among the members as to forming a group need only predate the motions for appointment as lead plaintiff.⁴¹

The members of Trevena Group submitted a joint declaration stating that they participated in an extensive telephone conference several days before determining that they would jointly move to become lead plaintiff.⁴² During this call, they thoroughly discussed the respective responsibilities of counsel and lead plaintiff, asked questions regarding the case and its possible resolution, incorporated a method of decision-making during the course of litigation, exchanged contact information with each other, and ultimately committed themselves to the zealous prosecution and oversight of the case.⁴³ The other Moving Plaintiffs have produced no evidence, as opposed to merely speculation, that Trevena Group would not be able to function as

---

⁴⁰ *Id.* at 266–67.

⁴¹ *See Aguilar v. Vitamin Shoppe, Inc.*, No. 17-6454, 2018 WL 1960444, at *10 (D.N.J. Apr. 25, 2018) (crediting that in their joint declaration submitted to the court, the group members explained that before deciding to file a joint motion, they thoroughly entertained such decision by conversing with one another); *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6713, 2014 WL 1395059, at *8 (E.D. Pa. Apr. 10, 2014) ("[F]ocusing on the lack of a relationship between the members [of the group] is misplaced. . . . [T]he affidavits submitted . . . show a willingness and ability to work together, discuss the issues surrounding the merits of this litigation, and decide on a procedural course of conducting this litigation."); *cf. Takata v. Riot Blockchain, Inc.*, Nos. 18-2293, 18-8031, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (holding that the lead plaintiff group was not adequate, in part because "[a]lthough they submitted a timely declaration, the declaration lacks any mention of contact prior to filing the motion"); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) (holding that the group could not work effectively to adequately represent the interests of the class because the group "concede[d] that the only pre-existing relationship among the various proposed individuals [was] the fact that they all invested through the same broker").

⁴² Trevena Group Joint Decl. in Supp. of Mot. [Doc. No. 8-17] at 2.

⁴³ *Id.* at 2-3. At the February 20 oral argument hearing, Trevena Group's counsel also informed the Court that the members have been closely following the case, have corresponded in a timely manner when necessary, and are more than adequately prepared to fairly and adequately protect the interests of the class.

10

a cohesive and independent group,[44] or that it will not able to "fairly and adequately protect the interests of the class."[45]

### C. Appointment of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the court.[46] The court shall not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class."[47]

Having reviewed the submissions from Trevena Group as to its selection of Block & Leviton LLP as its choice of lead counsel and Kaufman Coren & Ress, P.C. as liaison counsel, the Court finds that there is no basis to interfere with the strong presumption in favor of approving counsel.[48] Both of these law firms have extensive and substantial experience in class action securities litigation, as reflected in their firm biographies which highlight their numerous successful prosecutions of such cases.[49] Accordingly, the Court approves Trevena Group's selection of counsel.

---

[44] *See In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (highlighting that proposed lead plaintiff groups must "demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class").

[45] *In re Cendant Corp. Litig.*, 264 F.3d at 266. Because the presumptive status of Trevena Group has not been rebutted by the other Moving Plaintiffs, the Court need not address the merits of whether movant Lanphie Ping, with approximately half the amount of total losses as Trevena Group, would be a sufficient candidate for lead plaintiff.

[46] 15 U.S.C. § 78u-4(a)(3)(B)(v).

[47] *In re Cendant Corp. Litig.*, 264 F.3d at 274 (internal quotation marks omitted).

[48] *See In re Cendant Corp. Litig.*, 264 F.3d at 276 ("[T]he [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

[49] Deborah Gross Decl., Exs. M, N [Doc. Nos. 8-15, 8-16]; *see also Rabin*, 254 F. Supp. 3d at 761 ("Having reviewed movants' submissions to the Court, including the firm biographies, I find no basis to reject the presumption in favor of approving [lead plaintiff's] selection of counsel." (citation omitted)). As noted by Block & Leviton's publication, its experience in successful large class action securities litigation matters extend to plaintiffs in *In re BP Sec. Litig.* (S.D. Tex.), *In re Google Inc. Class C S'holder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Mktg., Sales & Prods. Liab. Litig.* (N.D. Cal.). Deborah Gross Decl., Ex. M [Doc. No. 8-15].

## V. CONCLUSION

For the foregoing reasons, Trevena Group shall be appointed as lead plaintiff for the class and its selection of Block & Leviton LLP as its choice of lead counsel and Kaufman Coren & Ress, P.C. as liaison counsel is approved. An appropriate order follows.